UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
BLANCA CENTENO,

                    Plaintiff,

              - against -

75 LENOX REALTY LLC/
J.K. MANAGEMENT CORP.,

                   Defendants.

------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**14 CV 1916 (DLI)(LB)**

**BLOOM, United States Magistrate Judge:**

      Plaintiff, Blanca Centeno, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*. ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*, the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exex. L. § 290, *et seq*. Plaintiff's amended complaint alleges that defendants, 75 Lenox Realty LLC ("75 Lenox") and J.K. Management Corporation ("J.K. Management"), discriminated against her based on her age and gender, denied her rights under the FMLA, and retaliated against her for her complaints of discrimination, for requesting leave under the FMLA, and for a prior FLSA lawsuit. In addition, plaintiff alleges that defendants breached their contract by failing to pay her the vacation time she was owed upon her termination.

      Defendants move for summary judgment on the grounds that: J.K. Management is not a proper party; that defendants are not covered by the applicable federal and state employment statutes; that plaintiff's claims are precluded; and that defendants had a legitimate, non-discriminatory, and non-retaliatory reason for terminating Ms. Centeno's employment. Plaintiff

moves for partial summary judgment on the grounds that J.K. Management is a proper defendant and defendants are employers subject to the specific federal and state employment laws relied on herein.  The Honorable Dora L. Irizarry referred the parties' motions to me for a Report and Recommendation in accordance with 28 U.S.C § 636(b).  For the reasons set forth below, defendants' motion for summary judgment should be granted in part and denied in part; plaintiff's cross-motion for partial summary judgment should likewise be granted in part and denied in part.

## BACKGROUND[1]

### I.   Factual History

#### a.   J.K Management Corporation and 75 Lenox, LLC

J.K. Management, which is owned by Jacob Kempler, is a company that manages 19 residential buildings in Brooklyn, the Bronx, and Manhattan. (Defs' 56.1 at ¶¶ 1, 5; Pl's 56.1 at ¶¶ 8, 9.)  J.K. Management is located at 303 Beverley Road in Brooklyn, New York. (See Esther Jenkelowitz Deposition ("Jenkelowitz Dep."), annexed to Diller Decl. as Exhibit B ("Ex. B.") at 5:13-15.))  The Jacob Kempler Family Partnership is the principal owner of 16 of the 19 buildings managed by J.K. Management.[2] (Pl.'s 56.1 at ¶ 12.)  75 Lenox, LLC is the legal entity that owns an eighty-one unit apartment building located at 75 Lenox Road in Brooklyn, New York. (See Jenkelowitz Dep., Diller Decl., Ex. B at 12:22-13:9; 22:14-15; see also Chart No. 2, Building

---

[1] Upon a careful review of the record, the facts are taken from the undisputed assertions set forth in Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment Pursuant to Local Civil Rule 56.1 ("Defs' 56.1") [Docket Entry No. 56-3], the affidavit of Leon I. Behar in support of defendants' motion for summary judgment ("Behar Aff.") [Docket Entry No. 58] and the exhibits attached thereto, the additional affidavits in support of defendants' motion for summary judgment [Docket Entry Nos. 56-1, 56-2, 71], Plaintiff's Statement Pursuant to Local Civil Rule 56.1 in Opposition to Defendants' Motion for Summary Judgment  ("Pl's 56.1") [Docket Entry No. 60], the declaration of Rebekah Diller in Support of Plaintiff's Cross–Motion for Partial Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Diller Decl.") [Docket Entry No. 61] and the exhibits attached thereto, the additional affidavits in support of plaintiff's cross-motion for summary judgment [Docket Entry Nos. 62-69]. Unless otherwise noted, each fact is either undisputed or not contradicted by evidence in the record. As to each motion, the Court construes the facts in the light most favorable to the non-moving party. See Capobianco v. City of New York, 422 F.3d 47, 50 (2d Cir. 2005).

[2] The three other buildings are housing cooperatives ("co-ops") with a different ownership structure. (Pl's 56.1 at ¶¶ 12, 13.)

Ownership Chart ("Building Chart"), annexed to Diller Decl. as Exhibit C ("Ex. C.")) 75 Lenox is one of the 16 buildings owned by the Jacob Kempler Family Partnership that is managed by J.K. Management. (Id.)

Although J.K. Management is a separate legal entity from the 19 buildings it manages, including 75 Lenox, Jacob Kempler, J.K. Management's president, owner, sole shareholder, and director, has an ownership interest in all 19 buildings. (See Defs' 56.1 at ¶¶ 1-2; Pl's 56.1 at ¶¶ 8-9; Defendants' Verified Responses and Objections to Plaintiff's First Set of Document Requests and Interrogatories ("Defs' Discovery Responses"), annexed to Diller Decl. as Exhibit A ("Ex. A"); see also Cooperative Offering Plans for 303 Beverly Road, 224 Highland Boulvard, and 100 Ocean Parkway, annexed to Declaration of Jake Lader ("Lader Decl."), as Exhibits A, B, and C.)) J.K. Management oversees the hiring and firing of the employees working at each building,[3] the payroll for all personnel in the buildings, the accounts for the buildings' bills, and the communications with the buildings' tenants. (Pl's 56.1 at ¶ 11.)

In 2012 and 2013, J.K. Management employed between two and three individuals to work at 75 Lenox, including Blanca Centeno and Jose Reyes. (See Spreadsheet No. 6, Full-time and Part-time Employee Lists for J.K. Management, ("2012-13 Employee Lists"), annexed to Diller Decl. as Exhibit C ("Ex. C"); see also Defs' 56.1 at ¶¶ 9-10.)) In 2012, J.K. Management employed 16 employees, 4 full-time employees, and 12 part-time employees.[4] (See 2012-13 Employee Lists, Diller Decl., at Ex. C; see also Pl's 56.1 at ¶ 16; Defs' 56.1 at ¶ 12.) In 2013, J.K. Management

---

[3] For the three co-op buildings, the respective board of directors for each building oversees the hiring and firing of employees. (Pl's 56.1 at ¶ 13.)

[4] There are slight discrepancies between the excel spreadsheets listing the employees and the New York State Wage Reports. (Compare 2012-13 Employee Lists, Diller Decl., at Ex. C with New York State Wage Reports, Diller Decl., at Exhibit G ("Ex. G") (where the employee lists range from 13 to 17 employees throughout the 2012-2013 time period). This discrepancy is likely due to personnel actions between reports. Notwithstanding these discrepancies, the parties do not dispute that J.K. Management employed 16 individuals in 2012, 4 full-time and 12 part-time. (Pl's 56.1 at ¶ 16; Defs' 56.1 at ¶ 12).

employed 18 employees, including 4 full-time employees, and 14 part-time employees. (See 2012-13 Employee Lists, Diller Decl., at Ex. C; see also Pl's 56.1 at ¶ 16; Defs' 56.1 at ¶ 12.)  In 2012, the total number of employees employed in buildings managed by J.K. Management totaled 61, including 35 full-time employees and 26 part-time employees. (See 2012-13 Employee Lists, Diller Decl., at Ex. C; Defs' 56.1 at ¶ 12.)  In 2013, J.K. Management employed 67 employees in the buildings they managed, including 37 full-time employees and 30 part-time employees. (See 2012-13 Employee Lists, Diller Decl., at Ex. C; Defs' 56.1 at ¶ 12.)

### b. Blanca Centeno's Employment History

#### i. 1992-2011

Plaintiff Blanca Centeno ("Centeno") was born in 1957 and married Jose Reyes ("Reyes") in 1977. (Affidavit of Blanca Centeno ("Centeno Aff.") at ¶ 2.)  In June of 1992, Reyes was hired to be the superintendent at 75 Lenox Road. (Id. at ¶ 4.)  On October 15, 1992, Centeno was hired by defendants to work as a porter at 75 Lenox Road. (Defs' 56.1 at ¶ 20; Pl's 56.1 at ¶ 1.)  As a porter, Centeno maintained the building's cleanliness; her responsibilities included taking out the garbage, removing snow, and sweeping and mopping the building's common areas. (Pl's 56.1 at ¶ 2; Defs' 56.1 at ¶ 21.)

Throughout her employment at 75 Lenox, Centeno was supervised by individuals employed by J.K. Management, including property manager Jacob Schwartz. (Pl's 56. at ¶ 4.) From the beginning of plaintiff's employment until 2011, the property at 75 Lenox was "always in decent condition[.]" (See Jacob Schwartz Affidavit ("Schwartz Aff.") at ¶ 16.)  From 1992 to 2011, plaintiff received an annual Christmas bonus, typically between $200 and $300. (Centeno Deposition ("Centeno Dep."), annexed to Diller Decl. as Exhibit E ("Ex. E") at 23:16-24:5.)  The

bonuses were discretionary and awarded based upon plaintiff's job performance. (See Ludmila Esther Jenkelowitz Affidavit ("Jenkelowitz Aff.") at ¶ 93.)

### ii. 2012-2013

In 2012, plaintiff alleges her relationship with defendants changed after she filed a federal wage and hour lawsuit against the defendants. Subsequent to resolving the lawsuit, plaintiff did not receive a Christmas bonus, was not given leave under the Family Medical Leave Act, and was ultimately terminated from her position as a porter.

On June 8, 2012, plaintiff, who was represented by counsel, filed a prior complaint in this District against 75 Lenox Realty, LLC and Jacob Kempler alleging various wage and hour violations under the Fair Labor Standards Act and the New York Labor Law. (See Complaint, at Docket Entry No. 1, Blanca Centeno v. 75 Lenox Realty LLC, No. 12 CV 2892 (JBW)(JO); see also Confidential Settlement Agreement and General Release ("Settlement Agreement"), annexed to Behar Aff., as Exhibit F ("Ex. F."))  In late 2012, the parties reached an agreement to settle the prior matter.  In December of 2012, Centeno voluntarily dismissed the prior lawsuit and signed a general release in exchange for defendants' payment of $12,500 to plaintiff. (Defs' 56.1 at ¶ 49; Settlement Agreement, Behar Aff. at Ex. F.)  In the same month that plaintiff settled the prior lawsuit, plaintiff did not receive a Christmas bonus for the first time since she had been employed by defendants.[5] (See Schwartz Aff. at ¶ 16; Jenkelowitz Aff. at ¶ 93.)

---

[5] The parties dispute the reason that plaintiff did not receive a Christmas bonus. While plaintiff alleges that she was denied a Christmas bonus in retaliation for her FLSA lawsuit and settlement, defendants assert that she was not given a bonus because of the condition of the building as well as plaintiff's poor job performance. (Schwartz Aff. at ¶ 16; Jenkelowitz Aff. at ¶ 93.)

In February 2013, Jose Reyes became ill.[6] (Defs' 56.1 at ¶ 25; Centeno Dep., Diller Decl., Ex. E at 10:10-25.)  During this time, Centeno and Reyes were divorced.[7] (Centeno Aff. at ¶¶ 2, 10, 36.)  Plaintiff alleges that, in April of 2013, she spoke with the property manager, Jacob Schwartz, and office manager, Esther Jenkelowitz, and requested a leave of absence in order to take care of Reyes. (See Centeno Aff. at ¶¶ 25, 26.)  Plaintiff also alleges that during her conversation with Jenkelowitz she stated that she knew her rights, and that "there is a law and that [Jenkelowitz] could not fire me." (Id. at ¶ 24.)  On a separate occasion, plaintiff spoke with Jenkelowitz about her position and Jenkelowitz told her "Come on, Blanca, you are not a young person. Your husband is not going to recover. Come on, you cannot handle the building. You are a woman. You cannot handle the building." (Id. at ¶ 28; Centeno Dep., Diller Decl., Ex. E at 41:7-16.)  Defendants dispute the substance of plaintiff's conversation with Jenkelowitz and assert that, instead of seeking leave to care for Reyes, plaintiff asked to be fired in order to qualify for a drug program. (Schwartz Aff. at ¶ 25; Jenkelowitz Aff. at ¶¶ 27, 60.)  The record is unclear as to whether plaintiff took time off from her job while Reyes was sick. (See Jenkelowitz Aff. at ¶ 33 ("during the few months that Mr. Reyes was ill, and plaintiff allegedly attended to him and missed work as a result, Plaintiff was paid in full . . . even though she was unable to devote time to her job and perform her tasks."); but see Centeno Aff. at ¶ 30 (plaintiff continued to do her job and maintained the building throughout Reyes' illness)).

During this time, defendants assert that the condition of the building deteriorated as plaintiff failed to properly perform her job requirements. (See Schwartz Aff. at ¶¶ 16, 22; Jenkelowitz Aff. at ¶ 54.)  In fact, defendants submit that management received many tenant

---

[6] Jose Reyes died on August 4, 2013. (Defs' 56.1 at ¶ 25.)
[7] It is not clear from the record when Centeno and Reyes divorced.  Nor is it clear whether Centeno and Reyes were living together at the time Reyes became ill. However, it is undisputed that during the relevant time period, Centeno and Reyes were not married.

complaints and that the building received a number of building code violations. (<u>See</u> Jenkelowitz Aff. at ¶ 54; Schwartz Aff. at ¶ 22; <u>see also</u> Tenant Statements, annexed to Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment ("Defs' Reply") as Exhibit B ("Ex. B.")) Defendants allege that as plaintiff's job performance deteriorated, Schwartz warned her several times and instructed her regarding how she had to improve. (<u>See</u> Schwartz Aff. at ¶ 22.)  Plaintiff disputes defendants' assertions and alleges that the building's violations were unrelated to cleanliness and, in support, several tenant declarations are provided attesting to the condition of the building while Centeno was employed. (<u>See</u> Building Registration Summary Report for 75 Lenox Road, ("Violations List"), annexed to Diller Decl. as Ex. C; <u>see also</u> Tenant Declarations, (ECF Nos. 64-69.))  Plaintiff further alleges that during this time period, J.K. Management changed the locks in the building, prevented plaintiff from accessing the supplies necessary for her to do her job, and sent a man to do plaintiff's job. (Centeno Aff. at ¶ 30.)

By letter dated June 24, 2013, defendants terminated plaintiff's employment with J.K. Management at 75 Lenox. (<u>See</u> June 24th Termination Letter ("Termination Letter"), annexed to Behar Aff., as Exhibit E ("Ex. E.")) The letter, written on J.K. Management letterhead and signed by Jacob Kempler, informed plaintiff that due to "the unacceptable condition of the building" her employment would be terminated on June 30, 2013. (<u>See</u> <u>id.</u>)  Upon her termination, plaintiff did not receive her two weeks of annual vacation that she alleges she was owed under her oral contract with defendants. (Centeno Aff. at ¶ 11.)

### c.  Centeno's New York State Division of Human Rights Complaint

Prior to her termination, and as a result of what plaintiff believed was discrimination, on June 19, 2013, plaintiff filed a Complaint with the New York State Division of Human Rights

("NYSDHR").[8] (See Defs' 56.1 at ¶ 30; NYSDHR Complaint, annexed to Behar Aff. as Exhibit D ("Ex. D.")) The NYSDHR Complaint listed 75 Lenox Realty Corporation, LLC as the Respondent.[9] (See NYSDHR Complaint and Order, Behar Aff. at Ex. D.) The NYSDHR Complaint specifically alleged that plaintiff was terminated and "discriminated against because of her age (56 years) and sex (female)." (NYSDHR Determination and Order after Investigation ("Determination and Order"), annexed to Behar Aff. as Ex. D.)) By Notice dated July 3, 2013, the NYSDHR informed Jacob Kempler of plaintiff's Complaint. (Defs' 56.1 at ¶ 31.)

In investigating the NYSDHR Complaint, the NYSDHR spoke with Centeno and Jenkelowitz, and reviewed various documents, including defendants' payroll records. (See Jenkelowitz Dep., Diller Decl., Ex. B at 63-65; Centeno Aff. at ¶ 35.) On December 13, 2013, the NYSDHR issued a Determination and Order dismissing plaintiff's NYSDHR Complaint in its entirety. In doing so, the NYSDHR found "NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of [by Centeno]." (See Determination and Order, Behar Aff., Ex. D (emphasis in original)). By Dismissal and Notice of Rights mailed on February 4, 2014, the EEOC adopted the NYSDHR's findings. (Dismissal and Notice of Rights, annexed to Behar Aff. as Ex. D.)

## II. Procedural History

On March 25, 2014, plaintiff, proceeding *pro se*, filed her complaint against "75 Lenox Realty LLC c/o J.K. Management Corp" alleging employment discrimination based on her age and gender. (Complaint, ECF No. 1.) The summons and complaint were served on "75 Lenox Realty LLC c/o J.K. Management Corp." at 303 Beverly Road, Brooklyn, New York. (ECF No.

---

[8] The NYSDHR Complaint authorized the NYSDHR to accept her Complaint on behalf of the Equal Employment Opportunity Commission ("EEOC"). (See Defs' 56.1 at ¶ 30.)

[9] The NYSDHR Complaint listed the address for 75 Lenox as 303 Beverly Road, the address for J.K. Management. The NYSDHR Complaint also listed the name of J.K. Management's office manager, Esther Jenkelowitz. (Id.)

8.) Defendant 75 Lenox Realty LLC answered the complaint and in its Third Affirmative Defense stated that "75 Lenox Realty LLC c/o J.K. Management Corp." is an improper party and that "Plaintiff likely intended to plead against 75 Lenox Realty, LLC." (Answer to Original Complaint, ECF No. 6.)  On August 20, 2014, plaintiff requested *pro bono* counsel. (ECF No. 26.)  The Court granted plaintiff's request and on October 14, 2014, Toby Golick of the Bet Tzedek Legal Services Clinic at the Benjamin N. Cardozo School of Law, filed a notice of appearance on plaintiff's behalf. (ECF No. 28.)

On August 31, 2015, the parties filed a Stipulation Permitting Amendment of the Complaint. (ECF No. 44.)  On the same day, plaintiff filed the Amended Complaint which listed the defendants as "75 Lenox Realty, LLC/J.K. Management Corp." (ECF No. 45.)  On September 21, 2015, defendant 75 Lenox Realty, LLC answered the Amended Complaint. (ECF No. 46.)  In its answer, defendant 75 Lenox Realty, LLC noted that "the only proper party to this action is 75 Lenox Realty LLC" and that plaintiff improperly named "75 Realty/JK Management Corp." as defendants." Id.  In its Third Affirmative Defense, defendant 75 Lenox Realty, LLC stated that "plaintiff failed to name a proper party to the Complaint as stipulated" and that plaintiff "deviated from the Stipulation . . . by changing the caption of the case." Id.

The parties conducted discovery and now cross-move for summary judgment. (ECF Nos. 56-72.)  The Honorable Dora L. Irizzary referred the parties' motions to me for a Report and Recommendation in accordance with 28 U.S.C § 636(b).

## STANDARD OF REVIEW

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011)

(quoting Fed. R. Civ. P. 56(a)).  A fact is material if it is one that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248).  "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party."  Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

However, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor.  Anderson, 477 U.S. at 257.  "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."  Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)).  Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment."  Id. (quoting Anderson, 477 U.S. at 252).

## DISCUSSION

### I.    J.K. Management is a Proper Party

#### a.  The Amended Complaint Properly Named J.K. Management

Defendants allege that J.K. Management is not a proper party to this action as plaintiff failed to name J.K. Management in her original complaint and plaintiff's counsel improperly added J.K. Management in the Amended Complaint.  (See Memorandum of Law in Support of

Defendants' Motion for Summary Judgment ("Defs' Memorandum") at p. 6.)   Specifically, defendants submit that even though the parties signed a Stipulation consenting to the filing of an Amended Complaint, plaintiff's counsel neglected to inform defendants' counsel that the Amended Complaint and the caption would change to affirmatively include J.K. Management as a separate defendant. (Id.)   In support of their position, defendants attach the Stipulation, the Amended Complaint, and an e-mail exchange between counsel regarding the Amended Complaint. (See Behar Decl., Exhibit A ("Ex. A."))   Upon my careful review of the record, I find that defendants' position is without merit.

By e-mail dated August 20, 2015, plaintiff's counsel informed defendants' counsel that plaintiff sought to file an Amended Complaint and attached the Amended Complaint to the e-mail. (Id.)   The Amended Complaint clarified and clearly presented the claims previously asserted in plaintiff's *pro se* complaint. Although the Amended Complaint changed the caption from "75 Lenox Realty LLC c/o J.K. Management Corp." to "75 Lenox Realty, LLC/J.K. Management Corp.", the body of the Amended Complaint made clear that plaintiff's claims were alleged against two defendants: 75 Lenox and J.K. Management.[10] (Amended Complaint, ECF No. 46, at ¶¶ 3, 6.)

Defendants now ask this Court to find that plaintiff misrepresented the identity of the defendants in the Amended Complaint because the caption included on the Stipulation reflected the caption from the original complaint rather than the caption from the proposed Amended Complaint.   Defendants' argument cannot be credited.[11]   The Stipulation properly included the

---

[10] Plaintiff could have obviated this as an issue by listing 75 Lenox and J.K. Management instead of "75 Lenox Realty, LLC/J.K. Management Corp." in the caption.

[11] Defendants' position is disingenuous.   The answer to the original *pro se* complaint on behalf of 75 Lenox, stated that "plaintiff likely intended to plead against 75 Lenox" and not J.K. Management. (ECF No. 6, at ¶ 6.)  Thus, J.K. Management was clearly on notice that plaintiff had filed this lawsuit against it. As evidenced by defendants' arguments on summary judgment, from defendants' perspective, J.K. Management is not plaintiff's employer. However, and notwithstanding defense counsel's belief, the Amended Complaint named both 75 Lenox and J.K. Management as defendants.

caption as reflected in the original complaint as, at the time the Stipulation was filed, the Amended Complaint was not the operative pleading. However, even if the Court were to find that the caption was misleading, "the caption itself is normally not determinative of the identity of the parties." Nationwide Mut. Ins. Co. v. Kauman, 896 F. Supp. 104, 109 (E.D.N.Y. 1995) (citations omitted). In determining parties, "the court should be guided by whether a reasonably knowledgeable layperson could conclude from the circumstances, that he or she had been made a party to the lawsuit." Id. Here, the Amended Complaint, which was provided to defendants' counsel prior to his endorsement of the Stipulation, made clear that J.K. Management was added as a defendant.

Defendants' counsel may have failed to diligently review the Amended Complaint prior to signing the Stipulation. However, J.K. Management was properly named as a defendant herein. Moreover, the Court finds that J.K. Management and 75 Lenox should be considered a single-employer. (See infra Part III.) Accordingly, the Court should find that J.K. Management is a proper party to the instant lawsuit.[12]

### b. Plaintiff's Failure to Name J.K. Management in Her NYSDHR Complaint Does Not Bar Plaintiff's Title VII and ADEA Claims

Defendants also assert that J.K. Management should be dismissed for plaintiff's failure to name J.K. Management in her Complaint with the NYSDHR and EEOC. (Defs' Memorandum at p. 7.) The Second Circuit has held that "[a] prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant." Johnson v. Palma, 931 F.2d 203, 209 (2d Cir. 1991). Dismissal is warranted for failure to name a party as a respondent in an EEOC charge. See France v. Touro Coll., No. 14 CV 4613

---

[12] Pursuant to Federal Rule of Civil Procedure 60(a), the Clerk of Court is directed to correct the docket sheet to reflect J.K. Management as a party in this action. If this Report and Recommendation is adopted, defendant J.K. Management shall file its answer to the Amended Complaint within 14 days.

(NGG) (CLP), 2016 WL 1105400, at *4 (E.D.N.Y. Feb. 16, 2016), report and recommendation adopted sub nom., 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016).  However, the Second Circuit has "taken a 'flexible stance in interpreting Title VII's procedural provisions,' so as not to frustrate Title VII's remedial goals." Johnson, 931 F.2d at 209 (quoting Egelston v. State University College at Geneseo, 535 F.2d 752, 754-55 (2d Cir. 1976)).

The exception to the general rule that a defendant must be named in the EEOC complaint is known as the 'identity of interest exception'. See Johnson 931 F.2d at 209-10.  The Second Circuit, in analyzing the 'identity of interest exception' considers four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence in the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241-42 (2d Cir. 1995) (citing Johnson, 931 F.2d at 209-10).  Although defendants argue that plaintiff fails to meet the four factors, factors two, three, and four weigh heavily in plaintiff's favor. Id.

First, the interests of J.K. Management and 75 Lenox are identical.  As clearly explained in J.K. Management's letter responding to Centeno's NYSDHR Complaint, "75 Lenox . . . owns the apartment building" while "J.K. Management has been engaged . . . to provide building management services, which includes the hiring of . . . porters" and is also responsible "to ensure that the buildings are maintained in accordance with local laws and ordinances . . . ." (J.K. Management Letter, annexed to Behar Aff. at Ex. D.) Second, J.K. Management suffered no prejudice as a result of Centeno's failure to properly name J.K. Management in the NYSDHR

Complaint.  Although the NYSDHR Complaint failed to explicitly name J.K. Management, the NYSDHR Complaint sufficiently identified J.K. Management to put J.K. Management on notice. (See NYSDHR Complaint, Behar Aff., at Ex. D.) The NYSDHR Complaint listed the address of 75 Lenox Realty Corporation LLC as 303 Beverly Road, Brooklyn, New York, which is the address for J.K. Management. (Id.)  In addition, the NYSDHR Complaint listed the name of J.K. Management's office manager, Esther Jenkelowitz, as an individual who discriminated against Centeno.[13] (Id.)  Further, defendant's letter response to plaintiff's NYSDHR Complaint was filed on behalf of both 75 Lenox Realty and J.K. Management.  (See J.K. Management Letter, annexed to Behar Aff. at Ex. D.)  The letter, which was written on J.K. Management letterhead, referred to J.K. Management several times and stated that "it is JK Management's contention that [Centeno's] claims are patently false." (Id.)  Finally, as explained by plaintiff's counsel, J.K. Management represented to plaintiff that its relationship to plaintiff was through 75 Lenox Realty and not J.K. Management. (See Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment [corrected version] ("Pl's Memorandum") at p. 10 (citing Centeno Aff. at ¶¶ 33-34.))

As plaintiff's NYSDHR Complaint alleged that both 75 Lenox Realty and J.K. Management discriminated against her, plaintiff's claims are not barred for failing to explicitly name J.K. Management in her NYSDHR Complaint under the 'identity of interest exception'. See France, 2016 WL 1105400, at *5.

## II.    Plaintiff's Claims Are Not Barred by Collateral Estoppel

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" Wyly v. Weiss, 697 F.3d 131, 140 (2d Cir.

---

[13] Specifically, the NYSDHR Complaint lists "Ester (I don't know last name), Administrator" as the individual who discriminated against plaintiff. (See NYSDHR Complaint and Order, Behar Aff. at Ex. D.)

2012) (quoting Taylor v. Sturgell, 553 U.S. 880, 892 (2008)).  "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see also 28 U.S.C. § 1738 (Judicial proceedings of any state court "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."); Colon v. Coughlin, 58 F.3d 865, 869 n.2 (2d Cir. 1995) ("We give a prior state court decision the same preclusive effect that the courts of that state would give to it.") (citations omitted).  In the instant action, "[w]e apply the preclusion law of New York[.]" Evans v. Ottimo, 469 F.3d 278, 281 (2d Cir. 2006) (citing Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985)).

"The 'fundamental notion' of the doctrine of collateral estoppel, or issue preclusion, 'is that an *issue of law or fact* actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the parties or their privies.'" Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008) (quoting United States v. Alcan Aluminum Corp., 990 F.3d 711, 718-19 (2d Cir. 1993) (emphasis in original)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n.5 (1979) ("Under the doctrine of collateral estoppel . . . the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.")  Preclusive effect is afforded so long as: "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Vargas v. City of New York, 377 F.3d 200, 205-206 (2d Cir. 2004). "The party seeking to assert preclusion bears the burden of proving identity of issue, while the adverse party bears the burden of proving the absence of a full and fair opportunity to litigate the issue." Skates v. Inc. Vill. of Freeport, No. 15

CV 136 (SJF)(AYS), 2016 WL 1459659, at *21 (E.D.N.Y. Jan. 28, 2016), report and recommendation adopted, 2016 WL 1452391 (E.D.N.Y. Apr. 12, 2016) (citing Basak v. New York State Dep't of Health, 9 F. Supp. 3d 383, 394 (S.D.N.Y. 2014)).

Defendants assert that because the NYSDHR dismissed plaintiff's NYSDHR Complaint she is now precluded from pursuing her claims in federal court.[14]  Plaintiff submits that she did not have a full and fair opportunity to litigate her claims and therefore, the NYSDHR finding of "No Probable Cause" should not preclude the instant action. The parties do not dispute that the issues in question in plaintiff's NYSDHR Complaint are sufficiently identical for purposes of preclusion. Rather, the parties dispute whether plaintiff had a full and fair opportunity to litigate the issues in the context of the NYSDHR proceedings.

"In the context of proceedings before the NYSDHR, the court considers the informality of the forum, whether or not there was a hearing allowing cross-examination of witnesses, access to discovery and, perhaps, most importantly, whether plaintiff was represented by counsel or appeared *pro se*." Skates, 2016 WL 145969 at *13 (citations omitted).  Although the determination is fact intensive and no factor is dispositive of preclusion, in cases where "plaintiff proceeded *pro se* before the administrative agency, courts have refused to find a full and fair opportunity to litigate and preclusion has been denied." Id. at *14 (citing Kosakow, 274 F.3d at 735-36; Basak, 9 F. Supp. 3d at 398-99).  Defendants submit that the investigation by the NYSDHR was sufficient and cite

---

[14] To the extent that defendants assert that plaintiff's Title VII and ADEA claims are barred by the NYSDHR decision, "defendants argument . . . suffers from a fundamental misunderstanding of [28 U.S.C. §1738], for the proceedings at issue here were not conducted by a state *court*, but rather by a state *agency*, because plaintiff never sought judicial review of the NYSDHR determination in state court." Wagner v. County of Nassau, No. 07 CV 4042 (JBF), 2009 WL 2824699, at * 7 (Aug. 28, 2009) (emphasis in original) (citing Univ of Tenn. v. Elliott, 478 U.S. 788, 796 (1986)); see also Kosakow v. New Rochelle Radiology Assoc., P.C., 274 F.3d 706, 728 (2d Cir. 2001) (explaining that because "§1738 only requires that federal courts give full faith and credit to decisions of state courts, and has no application to the decisions of state administrative agencies . . . [c]onsequently, unreviewed decisions of state administrative agencies will not bar a subsequent *de novo* trial under Title VII in federal court."); see also Astoria Fed. Sav. & Loan Ass'n. v. Solomino, 501 U.S. 104 (1991) (where the Court applied the same analysis in Elliot in finding that the ADEA "carries an implication that the federal courts should recognize no preclusion by state administrative findings with respect to age-discrimination claims.").

16

to <u>Benson v. North Shore-Long Isl. Jewish Health Sys.</u>, 482 F. Supp. 2d 320, 328 (E.D.N.Y. 2007), in support of their position. However, in <u>Benson</u>, in finding that plaintiff had a full and fair opportunity to litigate, the Court relied on the fact that plaintiff had "competent counsel representing her throughout the [NYSDHR] proceeding." <u>Id.</u> Here, due to the lack of a hearing and the fact that plaintiff was proceeding *pro se*, defendants' motion for summary judgment on the basis of collateral estoppel should be denied.

### III.    J.K. Management and 75 Lenox Should be Considered a Single Employer

Defendants assert that 75 Lenox does not qualify as an employer under Title VII, the ADEA, the FMLA, and the NYSHRL because it does not meet the statutory thresholds for the minimum number of employees. Plaintiff submits that J.K. Management and 75 Lenox should be considered a single employer and that their employees should be aggregated to reach the employee minimums required under the laws. The Court agrees with plaintiff.

### a.    Single Employer Doctrine[15]

"To prevail in an employment action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an 'integrated enterprise' with the employer, thus making one liable for the illegal acts of the other." <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 341 (2d Cir. 2000). "A 'single employer' situation exists 'where two nominally separate entities are actually part of a single integrated enterprise . . . .'" <u>Arcuelo v. On-Site Sales & Marketing, LLC</u>, 425 F.3d 193, 198 (2d Cir. 2005) (quoting <u>Clinton's Ditch Cooperative Co. v. NLRB</u>, 778 F.2d 132, 137 (2d Cir. 1985) (explaining that two separate

---

[15] Defendants refer to the 'single employer doctrine' and the 'joint employer doctrine' as if they are one in the same. However, they are, in fact, distinct doctrines. <u>See</u> <u>Arcuelo v. On-Site Sales & Marketing, LLC</u>, 425 F.3d 193, 198 (2d Cir. 2005) (explaining that a 'single employer' relationship exists when two entities are part and parcel of a "single integrated enterprise" while "[i]n a 'joint employer' relationship, in contrast, there is no single integrated enterprise.") (quotation omitted)). Here, the 'single employer' doctrine applies.

corporations under common ownership and management may be deemed to constitute a single enterprise.) "There is well-established authority under this theory that, . . . an employee, who is technically employed on the books of one entity[] [may] [] be deemed to be part of a larger 'single employer' entity." Id. (citing Cook, 69 F.3d at 1240).

The Second Circuit has adopted the following four-part test to determine whether two companies exist as a single-employer: "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." Id. "[N]o one factor is determinative . . . [however,] control of labor relations is the central concern." Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996) (citations omitted).  Although 75 Lenox and J.K. Management are separate legal entities, based upon the instant record, J.K. Management and 75 Lenox are a single-employer.  All four factors weigh in favor of finding defendants as a single-employer.  J.K. Management handles all of the operations and business aspects of 75 Lenox, including payroll, finances, and the running of the building.  In addition, J.K. Management controls the personnel decisions, including the hiring and firing of 75 Lenox employees, and 75 Lenox employees report directly to J.K. Management.  Given J.K. Management's control over 75 Lenox, as well as the many similar ownership interests of Jacob Kempler, it is clear that defendants should be considered a single employer under Second Circuit law. See e.g Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc., No. 14 CV 5269 (ARR), 2016 WL 5092588, at **15-17 (E.D.N.Y. Sept. 19, 2016); Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12 CV 5565 (PKC), 2016 WL 4179942, at *5 (E.D.N.Y. Aug. 5, 2016); Echevarria v. Insight Med., P.C., 72 F. Supp. 3d 442, 462 (S.D.N.Y. 2014); Ghaffar v. Willoughby 99 Cent, Inc., No. 09 CV 509 (JG), 2010 WL 3420642, at **2-3 (E.D.N.Y. Aug. 27, 2010).

Defendants argue that the single-employer doctrine is only applicable to corporate structures involving a parent company and a wholly owned subsidiary.  In support, defendants cite to the Seventh Circuit's decision in Papa v. Katy Industries, Inc., 166 F.3d 937 (7th Cir. 1999).  However, although the Seventh Circuit did not find single-employer liability, defendants misconstrue Papa.  In Papa, the Court explained that the purpose of the employee threshold is "to spare very small firms from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail" Id. at 940.  Notwithstanding this reasoning, Papa noted that exceptions exist, including where "an enterprise might split itself up into a number of corporations, each with fewer than the statutory minimum number of employees for the express purpose of avoiding liability under the discrimination laws."[16] Id. at 941.  Papa made clear that "[t]he privilege of separate incorporation is not intended to allow enterprises to duck their statutory duties." Id. Further, courts in this Circuit have applied the single-employer doctrine in situations outside of the parent-subsidiary context. See Parker v. Columbia Pictures Industries, 204 F.3d at 331, 341-42; U.S. v. New York State Dept. of Motor Vehicles, 82 F. Supp. 2d 42, 53 (E.D.N.Y. 2000) ("The principle that animates the [single employer] doctrine is not limited to the technical relation of parent to subsidiary corporation" (citation omitted)); see also Strohl v. Brite Adventure Ctr., Inc., No. 08 CV 259 (RML), 2009 WL 2824585, at *4 (E.D.N.Y. Aug. 28, 2009) (quoting Arcuelo, 425 F.3d at 198) ("It should be noted, however, that the cases defendants cite []all concern what are essentially parent corporations and their subsidiaries, but integrated employment can just as well occur in the context of 'separate corporations under common ownership and management'");

---

[16] The Court in Papa also delineated two additional exceptions: the typical parent-subsidiary relationship and a scenario where a parent company actually directs the discriminatory act. Id.

E.E.O.C. v. Everdry Mktg. & Mgmt., Inc., No. 01 CV 6329 (CJS), 2005 WL 231056, at *6 (W.D.N.Y. Jan. 31, 2005).

The record evidence here is clear that J.K. Management and 75 Lenox should be considered a single-employer for the purposes of the discrimination laws. Defendants' motion for summary judgment on this ground should therefore be denied and plaintiff's cross-motion for summary judgment should be granted.

### b. Aggregation under the Single Employer Doctrine

Even though the single employer doctrine applies to J.K. Management and 75 Lenox, there is still a question as to whether their employees should be aggregated for purposes of the employee thresholds set forth under Title VII, the ADEA, FMLA, and NYSHRL.

Defendants assert that the Court should not aggregate employees as the Second Circuit has never allowed aggregation to meet statutory thresholds. In Arcuelo, the Second Circuit confirmed that the Court "has as yet taken no position on whether aggregation is appropriate in either the single or joint employer context for the purposes of determining whether the Title VII threshold is met." 425 F.3d at 199. However, the Court did note that several "[d]istrict court opinions in [the] Circuit *have* allowed aggregation." Id. at 198 (emphasis in original) (explaining the district courts' logic that "*all* the employees of the constituent entities are employees of the overarching integrated entity, and all of those employees may be aggregated to determine whether [the single entity] employs" the statutory minimum.) As explained in Ayala v. Metro One Sec. Systems, Inc, "[w]here a plaintiff establishes that the single employer doctrine applies, the employees of the nominally separate entities comprising a single integrated enterprise may be aggregated to satisfy the [] employee requirement." No. 11 CV 233 (JG) (ALC), 2011 WL 1486559, at *8 (E.D.N.Y.

Apr. 19, 2011) (citing Laurin v Pokoik, No. 02 Civ. 1938 (LMM), 2004 WL 513999, at *4 (S.D.N.Y. Mar. 15, 2004) (internal citations omitted)).

Here, J.K. Management and 75 Lenox operate as a single entity and the Court should aggregate the number of their employees as if they are a single employer. Accordingly, defendants' motion on this issue should be denied and plaintiff's cross-motion should be granted.

### c.   Employee Thresholds under Title VII, ADEA, FMLA, and NYSHRL

Title VII, which creates a cause of action against employers that engage in discriminatory acts, defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . ." 42 U.S.C. § 200e(b).[17]   The ADEA and FMLA definition is identical, except that the ADEA requires twenty or more employees, 29 U.S.C. § 630(b), while FMLA requires fifty or more employees, 29 C.F.R. § 825.104(a).   Under the New York State Human Rights Law, an employer is defined as having at least four employees. N.Y. Exec. Law § 292.

Here, in 2012 and 2013, 75 Lenox employed between two and three individuals while J.K. Management employed between 16 and 18 employees.[18]   Therefore, in aggregating the number of employees under the single-employer theory, in 2012 and 2013, the single enterprise of 75 Lenox and J.K. Management employed between 18 and 21 employees.   Accordingly, plaintiff meets the

---

[17] Under Title VII and the ADEA, the employer must also be "engaged in an industry affecting commerce." 42 U.S.C. § 200e(b); 29 U.S.C. § 630(b).   Commerce is defined as "trade, traffic, commerce, transportation, transmission, or communication among the several States;  . . . ." 42 U.S.C. § 200e(g).   An industry affecting commerce means "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce  . . . . and further includes any governmental industry, business, or activity." 42 U.S.C. § 200e(h). Defendants assert that the management of 'local' residential apartment buildings does not qualify as an industry affecting commerce.   However, "[t]he rental of real estate is unquestionably such an activity." Russell v. U.S., 471 U.S. 858, 862 (1985).

[18] The parties refer to the employees as part-time or full-time employees; however, such distinction is not relevant; rather, courts may apply the 'payroll method' in determining employment. Walters v. Metropolitan Educational Enterprises, 519 U.S. 202, 210  (1997) ("We think that the payroll method represents the fair reading of the statutory language, which sets as the criterion the number of employees that the employer 'has' for each working day").   The record does not include and the parties do not appear to dispute the number of working days for defendants' employees. Defendants simply provide excel spreadsheets listing the employees as part-time and full-time. Accordingly, the Court treats the part-time and full-time employees as employees under the relevant statutory frameworks.

statutory minimum threshold under Title VII, ADEA,[19] and the NYSHRL and plaintiff's motion for summary judgment on this issue should be granted.

However, plaintiff cannot meet the statutory threshold under the FMLA.  In order to meet the required 50 person threshold, plaintiff argues that the Court should aggregate the total number of employees employed at all 19 buildings under the J.K. Management umbrella. Plaintiff's logic is straightforward. "J.K. Management runs an integrated enterprise of LLCs and coops" and the Court should find that J.K. Management is a single-enterprise not just with 75 Lenox, but with the 18 additional buildings and LLCs. (Pl.'s Memorandum at p. 13-14.)  Defendants, once again, cite to the Seventh Circuit's decision in Papa, and argue that the buildings are all separate entities and should be treated as such. (Defs' Reply at p. 6.)  As explained supra in Part III(a), the corporate structure of J.K. Management and the 16 LLCs,[20] all partially owned by Jacob Kempler, cannot avoid the statutory requirements of the anti-discrimination laws.  The record shows that J.K. Management handles personnel, payroll, legal concerns, building violations, and tenant issues for the 16 buildings. (See Jenkelowitz Dep., Diller Decl. at Ex. C, at 7-11.)  However, on the instant record, the Court cannot find that the relationship between J.K. Management and all of the 16 buildings is one of a single-employer.  The buildings are separate legal entities and the record is limited as to how each individual building is operated.  Accordingly, on the instant record and in the light most favorable to the non-movant, there are disputed issues of fact as to whether J.K.

---

[19] Defendants admit that, in 2013, 75 Lenox and J.K. Management employed at least 20 individuals combined. Therefore, based on the record, and under the ADEA, defendants meet the statutory threshold of 20 employees in 2013 but not in 2012.  However, under the ADEA, the term 'employer' "means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[]".  29 U.S.C. § 630(b).  As the allegations alleged by plaintiff under the ADEA occurred in 2013, infra Part IV, the Court can look to 2013 or 2012 to determine whether the statutory minimum is met.  Here, the statutory minimum is met as defendants admit that 75 Lenox and J.K. Management employed at least 20 individuals in 2013. See e.g. Weber v. George Cook, Ltd., 563 F. Supp. 598, 599 (S.D.N.Y. 1983) (citing Zimmerman v. North American Signal Company, 704 F.2d 347 (7th Cir.1983) (explaining that "such an interpretation is consistent with the purposes of the statute").

[20] Excluding the three co-op buildings, J.K. Management controls and operates 16 buildings/LLCs, including 75 Lenox. (See Jenkelowitz Dep., Diller Decl. at Ex. C, at 7-11.)

Management and the 16 buildings organized as LLCs should be considered as a single-employer.[21] See e.g. Rokuson v. Century Empire Szechuan Restaurant, Inc., No. 12 CV 1615 (WFK), 2015 WL 1542350 (E.D.N.Y. Mar. 31, 2015) (finding that there are genuine disputes of material facts as to whether a single-employer relationship existed between several Chinese restaurants owned by the same corporate entity); but see Ghaffar, 2010 WL 3420642, at **2-3 (E.D.N.Y. Aug. 27, 2010) (aggregating the employees of six separate stores under the single employer doctrine).

Accordingly, the Court should find that plaintiff meets the statutory minimum thresholds under Title VII, the ADEA, and NYSHRL.[22]  Therefore, the Court should deny defendants' motion for summary judgment and grant plaintiff's cross-motion for summary judgment finding that defendants are subject to liability as an employer under these statutes.  However, the Court should deny both plaintiff and defendants' cross-motions for summary judgment regarding whether defendants employ the requisite number of employees to qualify as an employer under the FMLA.[23]

### IV.   *Prima Facie* Case of Discrimination

#### a.   Title VII and ADEA Standard

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006).   Under the ADEA, it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to [her]

---

[21] The Court excludes the co-ops from its analysis as it is unclear whether the co-ops can be considered a part of an integrated enterprise.

[22] As discussed infra Part VII, defendants' motion for summary judgment regarding plaintiff's NYSHRL claims should be granted on other grounds.

[23] As discussed infra Part V, defendants' motion for summary judgment regarding plaintiff's FMLA claims should be granted on other grounds.

compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001). The framework for establishing a *prima facie* case of discrimination under Title VII and the ADEA are the same. See Terry v. Ashcroft, 336 F.3d 128, 137–38 (2d Cir. 2003); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Roge, 257 F.3d at 168.

A plaintiff establishes a *prima facie* case of discrimination by showing that: (i) the plaintiff was a member of the protected class; (ii) plaintiff was qualified for the job; (iii) plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Terry, 336 F.3d at 137-38 (citations omitted). A plaintiff's burden to establish a *prima facie* case of discrimination is *de minimis*. See Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001); see also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (plaintiff's burden "is not onerous"). If plaintiff succeeds in establishing a *prima facie* case, a presumption of discrimination arises and "the burden of production shifts to the employer 'to articulate some legitimate, non-discriminatory reason'" for the adverse employment action. Patterson v. Cnty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004) (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311 (1996)). If defendants offer such a reason, then the burden shifts back and remains with plaintiff to provide evidence that defendants' proffered reason was pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Patterson, 375 F.3d at 221.

Under the ADEA, on summary judgment, plaintiff must present "facts, which 'taken in [her] favor, suffice to . . . [show that] a triable issue [exists] as to whether [her] age was a 'but for' cause of [her] termination.'" Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014) (quoting Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010)). "The condition

that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employers['] *only* consideration, but rather that the adverse employment action[ ] *would not have occurred without it.*" Id. (quoting Fagan v. U.S. Carpet Installation, Inc., 770 F. Supp. 2d 490, 496 (E.D.N.Y. 2011) (emphasis in original)).  "For Title VII claims, 'the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, [must be] sufficient to sustain a reasonable finding that [her] dismissal was motivated at least in part by ... discrimination.'" Campbell v. N.Y. City Transit Auth., 93 F. Supp. 3d 148, 166 (E.D.N.Y. 2015), motion for relief from judgment denied, No. 11 CV 2827 (MKB), 2015 WL 7455842 (E.D.N.Y. Nov. 23, 2015), aff'd, No. 15 CV 1103, 2016 WL 6069229 (2d Cir. Oct. 17, 2016) (citing Adamczyk v. N.Y. Dep't of Corr. Servs., 474 F. App'x 23, 25 (2d Cir. 2012) (additional quotations and citations omitted)).

As plaintiff is a woman who was 56 years old at the time she was fired, defendants concede that plaintiff satisfies the first and third prongs necessary to establish a *prima facie* case of discrimination. However, defendants argue that plaintiff cannot establish the second and fourth prongs of her *prima facie* case, that she was qualified for the position and that the circumstances surrounding her termination do not give rise to an inference of discrimination.

### b.  Qualified Employee

Defendants argue that plaintiff was not qualified for her position because "plaintiff has absolutely no licenses or other indications of her qualification to work as a porter." (Defs' Memorandum at p. 16.)  Specifically, defendants cite to plaintiff's deposition where plaintiff states that she does not have a plumber's license or an electrician's license. (Centeno Dep., Diller Decl., Ex. E at 22:21-23:6.) Defendants' allegation that plaintiff lacked the qualifications for a job she held for over 20 years is belied by the record.  Plaintiff was employed by defendants as a porter,

not as a plumber or an electrician.  Although defendants do not suggest that a 'porter license' exists, it seems that defendants expect this Court to find that a porter is unqualified to maintain the cleanliness of a building without a plumbing license and/or an electrician's license.  This argument has absolutely no merit.

To be considered a qualified employee, plaintiff must only show that she "possesses the basic skills necessary for performance of [the] job.  Owens v. New York City Housing Auth., 934 F.2d 405, 409 (2d Cir. 1991) (internal quotation marks omitted).  Courts have found that a plaintiff can show qualification for the job based on their time in the position.  Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001), as amended (June 6, 2001) (explaining that plaintiff, who had performed the job for seven years, was qualified).  Here, as explained by Jacob Schwartz, defendants' building manager, the "[p]orter's job usually is to sweep the building, make sure the building is clean at all times, sweep the buildings maybe two times a week, [] mop the building, [and], make sure the garbage is out . . . [i]t's general, general cleaning." (Schwartz Dep., Diller Decl, Ex. D at 19:7-21.)  From 1992 to 2011, plaintiff did just that. (See id. at 23:3-25 (explaining that the building was kept in good condition until 2012); see also Schwartz Aff. at ¶ 16).  Accordingly, the Court finds that plaintiff was qualified for the position.

### c.   Inference of Discrimination

Various circumstances may give rise to an inference of discrimination, including, but not limited to:

> the employer's criticism of the plaintiff's performance in [] degrading terms [based on the employee's protected characteristic]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of [similarly situated] employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001) (quoting Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994)).

Here, Centeno alleges that Esther Jenkelowitz, defendants' office manager, told plaintiff that she was being fired because she could not handle the demands of the job due to her gender. In fact, in her deposition, Jenkelowitz testified that the demands of the job make it difficult "[f]or a woman to do." (Jekelowtiz Dep., Diller Decl., Ex. C at 60:22.)  Here, given plaintiff's minimal burden, Centeno satisfies the fourth McDonnell Douglas element, and has established a *prima facie* case of discrimination.

### d.  Legitimate, Non-Discriminatory Reason

The burden now shifts to the defendants to provide a legitimate, nondiscriminatory reason for Centeno's discharge. Defendants assert that they fired plaintiff because of her poor work performance, specifically, the uncleanliness of the building.  Defendants allege that they warned plaintiff several times regarding the cleanliness of the building and the dereliction of her duties. "Because poor job performance constitutes a legitimate, non-discriminatory reason, Defendants have satisfied their burden[.]"  E.E.O.C. v. Town of Huntington, No. 05 CV 4559 (DRH)(WDW), 2008 WL 361136, at *7 (E.D.N.Y. Feb. 8, 2008) (citing Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001), as amended (Apr. 20, 2001)).

### e.  Pretext

The crux of this case, like most discrimination lawsuits, is whether the asserted legitimate, nondiscriminatory reason was pretext for discrimination.  Construing the evidence in the light most favorable to plaintiff, the Court finds that there is a sufficient basis in the record for a trier of fact to question defendants' reason for terminating plaintiff and to find that defendants' reason was a pretext for discrimination.

In support of defendants' legitimate, nondiscriminatory reason that plaintiff was terminated due to her poor job performance, defendants cite to building code violations, tenant complaints, warnings from supervisors, and plaintiff's own testimony. However, as plaintiff points out, defendants have failed to produce any admissible evidence, other than testimony from defendants' employees, to support defendants' claim of plaintiff's poor performance. As such, defendants' motion for summary judgment should be denied as material issues of fact exist as to whether defendants' termination was based on her age and/or her gender.

First, defendants submit that 75 Lenox was issued many building code violations relating to the cleanliness of the building due to plaintiff's poor performance. (See Jenkelowitz Aff. at ¶ 54; Schwartz Aff. at ¶ 22). However, upon review of the building code violations, it appears that most, if not all, of the code violations, from January 1, 2013 to June 30, 2013, relate to the building's condition (i.e. painting, structural, and vermin) which is not the porter's responsibility. (See Violations List, Diller Decl., Ex. C). Second, defendants assert that many tenants complained about the cleanliness of the building.[24] (See Jenkelowitz Aff. at ¶ 54; Schwartz Aff. at ¶ 22; see also Tenant Statements, Defs' Reply, Ex. B.) However, defendants have only submitted unsworn inadmissible statements by several tenants,[25] while plaintiff attaches six tenant declarations sworn to under penalty of perjury that Centeno was an excellent porter who maintained the cleanliness of the building.[26] (See Tenant Declarations, (ECF Nos. 64-69)). Third, defendants allege that they

---

[24] Defendants also allege that plaintiff admitted in her deposition that she received complaints from tenants about the cleanliness of the building. (Defs' Memorandum at p. 18 (citing Centeno Dep., Diller Decl., Ex. E at 30.)) However, defendants mischaracterize plaintiff's deposition testimony. Although plaintiff does state that she received complaints from tenants, she further explained that the complaints related to when "[the tenants] owe[d] money to the landlord" or when "the City marshal or the clerk drop[ed] [off] letters." (Id. at 30:14-25.)

[25] Defendants also attach, to their reply, a "Survey of Residents" which appears to be a spreadsheet that includes several tenants' signatures underneath the sentence: "[t]he building maintenance and cleanliness has improved since Ms. Blanca Centeno has been replaced." (See Defs' Reply, Ex B.)

[26] Defendants assert that the tenant declarations provided by plaintiff are suspicious as they are unsworn and "all of [the] tenants either have or had housing court cases or private grievances against defendants, or have a *guardian ad litem* caring for them, and are therefore biased and/or not credible witnesses[.]" (Reply Affidavit in Opposition to Plaintiff's Cross-Motion and in Further Support of Defendants' Motion, ("Jenkelowitz Reply Aff.") at ¶ 27.)

issued plaintiff warnings regarding the uncleanliness of the building. (See Schwartz Dep, Diller Decl., Ex. D at 34-36.)  However, the warnings were only given orally and defendants have no record, outside of their testimony, that such warnings were given.

Finally, defendants claim that plaintiff's own testimony makes clear that "she was not fired because of her age or gender[.]" (Defs' Memorandum at p. 18 (emphasis in original)).  Defendants cite to the following deposition testimony:

> Q: So why do you think they fired you?
> A: Because they don't want me there. They want to put their people. They told me that "We want our people in the building." I asked him, "Who is your people? What are you talking about?"
> Q: Who said that?
> A: The administrator, Esther.
> Q: Esther. Why do you think she said that or allegedly said that?
> A: Because maybe she can put the people from her nationality or maybe she wants the people.

Centeno Dep., Diller Decl, Ex. E at 20:23-21:12.  However, defendants fail to address plaintiff's testimony immediately preceding the portion they quote:

> Q: Why do you think they fired you?
> A: For many reasons.  They say I am a woman. I am too old. "Come on, Blanca, you can't handle with the building." I say I have the experience, but they say no.[]

Id. at 19: 13-18.  It is clear from review of plaintiff's full testimony, and taking the facts in the light most favorable to the non-movant, there are material issues of fact in dispute whether the legitimate, non-discriminatory reason for plaintiff's termination was pretext for discrimination.[27]

---

Defendants are incorrect in that the declarations submitted by plaintiff are sworn to under penalty of perjury, 28 U.S.C. § 1746, whereas defendants' tenant declarations are undated and unsworn. This dispute further highlights that plaintiff's discrimination and retaliation claims should be decided at trial, not on the instant motion for summary judgment. (See Jenkelowitz Reply Aff. at ¶¶ 27-45.)

[27] Defendants assert that J.K. Management employs several female workers as well as individuals over the age of 40. (Defs' Memorandum at 18-19). Defendants also assert that there are two female porters employed at buildings managed by J.K. Management. (Id at 19.) Although these facts may be relevant to a jury's determination of whether defendant engaged in discrimination, given the totality of the record, they are not sufficient to grant defendants' motion for summary judgment.

The Court cannot resolve the question of whether the asserted legitimate, nondiscriminatory reason here was pretext for discrimination. "It is well-established that stray remarks, even if made by a decision maker, without more, do not constitute sufficient evidence to make out a case of discrimination." E.E.O.C. v. Town of Huntington, No. 05 CV 4559 (DRH), 2008 WL 361136, at *7 (E.D.N.Y. Feb. 8, 2008) (citing Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir.1998)).  However, where other indicia of discrimination exist, "the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance." Danzer, 151 F.3d at 56.  Here, given the record evidence that can be considered[28] and the factual disputes concerning plaintiff's termination, defendants' motion for summary judgment should be denied.

## V.     Retaliation

Defendants also move for summary judgment on plaintiff's claims for retaliation under Title VII, the ADEA, FLSA, and FMLA.

To establish a *prima facie* case of retaliation, plaintiff must show that (1) she participated in a protected activity known to the defendant; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. Richardson v. Comm'n on Human Rights & Opportunities, 532 F.3d 114, 123 (2d Cir. 2008); Kessler v. Westchester Cnty. Dep't Social Servs., 461 F.3d 199, 205-06 (2d Cir. 2006).  Retaliation claims are evaluated under the McDonnell Douglas burden-shifting framework discussed supra Part IV.  See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) ("[A] retaliation claim follows the familiar burden-shifting framework developed to evaluate allegations of

---

[28] Defendants' unsworn testimony cannot be considered by the Court. See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 65 (2d Cir. 1999) (explaining that a "district court should disregard an unsworn letter in ruling on a summary judgment motion" but that a declaration pursuant to 28 U.S.C. § 1746 may be considered) (collecting cases).

disparate treatment."); Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) ("The allocation of burdens of proof in retaliation cases follows the general rule enunciated by the Supreme Court in McDonnell Douglas Corp. . . . ." (citation omitted)).

### a.   Title VII/ADEA

Defendants argue that plaintiff cannot establish a *prima facie* case of retaliation as defendants did not become aware of plaintiff's NYSDHR Complaint until July 3, 2013, which was four days after plaintiff was terminated. (Defs' Memorandum at p. 20.)  As such, defendants assert that plaintiff cannot establish that defendants were aware of her 'protected activity' prior to her termination. However, the 'protected activity' that plaintiff alleges defendants retaliated against her for was not the filing of her NYSDHR Complaint; rather, plaintiff alleges that the 'protected activity' was plaintiff's oral complaints to Jenkelowitz regarding plaintiff's rights.[29]  (Pl.'s Memorandum at p. 21.)  On reply, defendants dispute that any such conversation occurred and that plaintiff fails to meet her evidentiary burden. (Defs' Reply at p. 9.)

Protected activity "refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) (citations omitted). This includes oral complaints of discrimination. See Delville v. Firmenich Inc., 920 F. Supp. 2d 446, 463 (S.D.N.Y. 2013) (where the Court found plaintiff's oral complaints of discrimination to be activity protected under the ADEA) (citing Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990); Bowen-Hooks v. City of N.Y., 13 F. Supp. 3d 179, 221 (E.D.N.Y. 2014) (under Title VII, protected activity includes informal complaints regarding discriminatory conduct); see also Greathouse v. JHS Security Inc., 784 F.3d 105, 115–16 (2d Cir. 2015) (where the Second

---

[29] To the extent that plaintiff is alleging retaliation based on her NYSDHR Complaint, defendants' motion for summary judgment should be granted as plaintiff cannot show that defendants knew of the NYSDHR Complaint prior to plaintiff's termination. (See Defs' 56.1 at ¶ 31.)

Circuit found oral complaints to a supervisor as protected activity under FLSA)).  Here, plaintiff's

oral complaints to Jenkelowitz constitute protected activity.

As defendants provide no additional substantive analysis, the Court cannot find that

defendants are entitled to summary judgment on plaintiff's Title VII and ADEA retaliation claims.

(See Defs' Memorandum at p. 19-20.)  Plaintiff has established a *prima facie* case for retaliation

and that there is an issue of fact with respect to pretext.[30]  Accordingly, and for the same reasons

as outlined supra part IV, defendants' motion for summary judgment on this issue should be

denied.

### b.  FLSA

The FLSA states that "it shall be unlawful for any person to discharge or in any other

manner discriminate against any employee because such employee has filed any complaint or

instituted or caused to be instituted any proceeding under or related to this chapter[.]" 29 U.S.C.

215(a)(3); see also Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010) (explaining that

the filing of the FLSA lawsuit is protected activity under the statute).  An FLSA relation claim is

analyzed under the same McDonnell Douglas burden shifting framework. Mullins, 626 F.3d at 53.

Here, plaintiff sufficiently sets forth a *prima facie* case for retaliation under the FLSA.

Plaintiff filed a complaint alleging claims under the FLSA, reached a settlement agreement, and

now alleges that she was denied a Christmas bonus and fired because of that complaint and

settlement. Due to the close proximity between the settlement, the bonus denial, and her

---

[30] Plaintiff was terminated within 1-2 months of plaintiff's complaints to Jenkelowitz. As such, "plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (citations omitted); see also Cunningham v. Consol. Edison Inc., No. 03 CV 3522 (CPS), 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) ("[A] passage of two months between the protected activity and the adverse employment action seems to be the dividing line." (collecting cases)). Although "temporal proximity alone is insufficient to defeat summary judgment at the pretext stage . . . a plaintiff may rely on evidence comprising her *prima facie* case, including temporal proximity, together with other evidence  . . . to defeat summary judgment." Kwan v. Andalez Group, LLC, 737 F.3d 834, 847 (2d Cir. 2013) (internal citations omitted).

subsequent termination, plaintiff establishes a causal link between the adverse actions and her FLSA action.  Defendants assert that plaintiff's termination and their failure to provide her a Christmas bonus were not in retaliation for the lawsuit but due to plaintiff's poor work performance. However, as discussed supra Part IV, plaintiff has questioned the validity of defendants' assertions regarding plaintiff's allegedly poor work performance.  In addition, plaintiff notes that Jenkelowitz specifically stated that several employees, including Mr. Kempler, Mr. Schwartz, and herself, felt that Centeno's filing of the FLSA complaint "was very wrong and [] was a lie."[31] (Jenkelowitz Dep., Diller Aff., Ex. B at 58:13-19.)  Accordingly, at the summary judgment stage, plaintiff has met her burden to demonstrate that there is a material issue of fact in dispute regarding whether it is "more likely than not [that] discrimination was the real reason for the employer[s'] actions." See Mullins, 626 F.3d at 53-54

In addition, and separate and apart from whether plaintiff has set forth an FLSA retaliation claim, defendants assert that the General Release, signed as a part of plaintiff's settlement in her prior FLSA action, bars plaintiff's retaliation claim.  The release provides that "CLAIMANT fully, finally, irrevocably, and forever release[s] and discharges COMPANY, . . . from any and all claims causes of actions or complaints with CLAIMANT has or may have against COMPANY, whether asserted in this action or not." (Settlement Agreement, Behar Aff., Ex F at ¶ 2.)  The Court rejects defendants' contention that the prior settlement agreement bars plaintiff's retaliation claim.  The release bars claims arising out of separate, pre-existent events that could have been, but were not, raised in the FLSA action.  However, the release could not bar plaintiff from bringing claims against defendants that had not yet happened when the release was signed.  Here, the retaliation alleged by plaintiff did not occur until after the settlement.  Accordingly, plaintiff's retaliation

---

[31] The Court notes that Jenkelowitz also testified that although people were aware of plaintiff's FLSA settlement, "nobody was angry." (Id. at 59:4-11.)

claim is not barred by the release.  "Construing it otherwise would risk conferring an indefinite prospective immunity on the release[.]" Info. Superhighway, Inc. v. Talk Am., Inc., 274 F. Supp. 2d 466, 471 (S.D.N.Y. 2003) (explaining that "courts have held general releases inapplicable to conduct subsequent to the execution of the release") (collecting cases)).

### c.  FMLA

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). "The Second Circuit recognizes two claims under the FMLA: (i) interference with FMLA rights, and (ii) retaliation for exercising FMLA rights." Museu v. Heart Share Human Services of New York, No. 12 CV 1851 (DLI), 2014 WL 1277006, at *3 (E.D.N.Y. Mar. 27, 2014) (citations omitted).  Here, plaintiff concedes that she was not entitled to leave under the Family Medical Leave Act as, at the time of her request, she was no longer married to Jose Reyes. (Pl.'s Memorandum at p. 23.)  Therefore, plaintiff proceeds only on her FMLA retaliation claim and not on her claim for interference.

To evaluate a retaliation claim under FMLA, courts use the McDonnel Douglas burden-shifting analysis. See Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004). In addition, to establish a *prima facie* case of retaliation, a plaintiff must show that (1) she exercised rights protected under the FMLA; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. See Higgins v. NYP Holdings, Inc., 836 F. Supp. 2d 182, 194–95 (S.D.N.Y. 2011) (citing Potenza, 365 F.3d at 168) (additional citations omitted)).  The first prong requires plaintiff to establish that she is an eligible employee who qualifies to take leave

under the FMLA. <u>Penberg v. Healthbridge Management</u>, 823 F. Supp. 2d 166, 178 (E.D.N.Y 2011) (citing 29 U.S.C. § 2612(a)(1)).

      At issue here is whether plaintiff can bring an FMLA retaliation claim where she is ineligible for leave under the FMLA.  Plaintiff asserts that her retaliation claim stands as "the retaliation doctrine protects employees' rights to apply for FMLA relief and does not require the employee to ultimately be entitled to relief." (Pl.'s Memorandum at p. 23-24.)  Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . (C) in order to care for the spouse . . . of the employee . . . if such spouse . . .  has a serious health condition." 26 U.S.C. 2612 (a)(1)(C).  The Second Circuit has not addressed whether an employee, who is not eligible under the FMLA, can establish a claim for FMLA retaliation.  In support of her contention that she can establish a claim, plaintiff cites to <u>Pereda v. Brookdale Senior Living Cmtys., Inc.</u>, where the 11th Circuit allowed an FMLA retaliation claim to proceed where plaintiff had applied for FMLA leave prior to her eligibility under the statute. 666 F.3d 1269, 1276 (11th Cir. 2012).  However, even if this Court were bound by the 11th Circuit's holding, <u>Pereda</u> is easily distinguished from the instant matter.  In <u>Pereda</u>, plaintiff, who was pregnant but had yet to give birth, was terminated after she requested maternity leave under the FMLA. <u>Id.</u>  The district court denied plaintiff's claim and found that because plaintiff had not yet given birth to her child, she was not entitled to FMLA protection at the time she requested leave. <u>Id.</u>  The 11th Circuit, in reversing the district court's decision, held that a retaliation claim could proceed in such a scenario and referred to the predicament as a "pre-eligible request for post eligible leave." <u>Id.</u>  Importantly, <u>Pereda</u> does not stand for the proposition that an ineligible employee who will never be eligible for FMLA leave may assert a claim for FMLA retaliation.[32]

---

[32] In fact, the 11th Circuit, in reversing the District Court's decision, concluded that the District Court cited decisions which were distinguishable, including <u>Hills v. Wal-Mart Stores, Inc.</u>, No. 98 Civ. 23197, 2010 WL 1839268, at *7-8

The instant matter is more similar to Walker v Elmore Cnty Board of Educ., where the 11th Circuit held that "[t]here can be no doubt that the request - made by an ineligible employee for leave that would begin when she would still have been ineligible - is not protected by the FMLA."[33] 379 F.3d 1249, 1253 (11th Cir. 2004).  In Walker, the Court specifically held that FMLA "does not protect an attempt to exercise a right that is not provided by FMLA[.]"[34] Id.  Accordingly, and even if the statutory threshold for the number of employees required under the FMLA is met, defendants' motion for summary judgment should be granted on plaintiff's FMLA retaliation claim.  Plaintiff cannot show, given the fact that she was divorced from Reyes, that she would have been eligible for leave under the FMLA. See e.g. Brown v. Omega Moulding Co., Ltd., No. 13 CV 5397 (SJF), 2014 WL 4439530, at *6, n.6 (E.D.N.Y. Sept. 9, 2014) (where the Court, in reliance on Walker, granted plaintiff leave to amend to assert allegations showing that she was an eligible employee under the FMLA as plaintiff's retaliation claim would fail if she was an ineligible employee under the FMLA); see also Basden v. Prof'l Transp., Inc., 714 F.3d 1034, 1039 (7th Cir. 2013) (finding that the Court should not extend FMLA rights to non-eligible employees); but see McArdle v. Town of Dracut/Dracut Pub. Sch., 732 F.3d 29, 36 (1st Cir. 2013) (collecting cases) (finding that "the case law is both split and not fully developed").

Accordingly, defendants' motion for summary judgment on plaintiff's FMLA claim should be granted.

---

(S.D. Fla. May 6, 2010), where the Court dismissed plaintiff's FMLA retaliation claim as plaintiff was not an eligible employee at the time of the request or when FMLA leave was to commence. Pereda, 666 F.3d 1269, 1276 at n.6.

[33] Here, and unlike in Pereda, Centeno was ineligible for FMLA at the time of her request for leave to take care of Reyes and would not have been eligible at the time she would have taken a leave of absence from work.

[34] Pereda did not alter the holding in Walker; rather, the Court answered the question specifically left open by Walker: "whether the FMLA protects a pre-eligibility request for post-eligibility maternity leave." Pereda, 666 F.3d at 1272 (citing Walker 379 F.3d at 1253).

## VI.     Breach of Contract

Plaintiff alleges that defendants violated her contractual rights when, at the time of her termination, defendants failed to pay plaintiff for the two weeks of paid vacation she was owed under their oral employment agreement.

Under New York law, "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." Benson, 482 F.Supp.2d at 331 (quoting Sabetay v. Sterling Drug, Inc., 69 N.Y. 2d 329, 514 N.Y.S.2d 209, 211 (1987). "The terms of an at-will employee's employment may be modified at any time." Id. (quoting Kempf v. Mitsui Plastics, No. 96 Civ. 1106 (HB), 1996 WL 673812, at * 6 (S.D.N.Y. Nov. 20, 1996). Here, plaintiff cannot dispute that she was an at-will employee; therefore, and without a written agreement, she cannot proceed on a breach of contract theory. See id.; see also Parker v. BJ's Wholesale Club, Inc., No. 13 CV 6065 (JS), 2015 WL 1247066, at *4 (E.D.N.Y. Mar. 18, 2015). Even if plaintiff were able to prove that she was not an at-will employee, plaintiff has submitted no admissible evidence to show that plaintiff was entitled to two-weeks of annual vacation and thus, defendants' motion for summary judgment should be granted on plaintiff's breach of contract claim.

## VII.    Plaintiff's State Law Claims Are Barred by the Election of Remedies Doctrine

Under the NYSHRL, "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction ... unless such person had filed a complaint hereunder or with any local commission on human rights." N.Y. Exec. Law § 297(9).  Thus, once a plaintiff brings a claim before the NYSDHR, he may appeal only to the Supreme Court of the State of New York.[35]  N.Y. Exec. Law § 298; see also York v. Ass'n of the

---

[35] Courts recognize "two exceptions to the election of remedies doctrine: (1) a complaint filed with the Commission or Division dismissed for administrative convenience; and (2) a complaint filed with the Commission or Division by

Bar, 286 F.3d 122, 127 (2d Cir. 2002) (under NYSHRL, claims "once brought before the NYSHDR, may not be brought again as a plenary action in another court"). The election of remedies doctrine applies even if the NYSDHR Complaint was brought *pro se*.[36] Wiercinski v. Mangia 57, Inc., No. 09 CV 4413 (ILG), 2010 WL 2681168, at *2 (E.D.N.Y. July 2, 2010) (finding election remedies applicable "even when the complainant is uncounseled and ignorant of the effects of the election of an administrative forum.").

"[C]ourts interpret the scope of claims precluded by the election of remedies broadly;" plaintiff must allege "a different set of facts" from those alleged in his NYSHDR complaint, to obtain review in this Court. Jackson v. N.Y. State Dep't of Labor, 709 F. Supp. 2d 218, 225 n.3 (S.D.N.Y. 2010); Higgins v. NYP Holdings, Inc., 836 F. Supp. 2d 182, 189 (S.D.N.Y. 2011) (noting that plaintiff's claims are barred under the election of remedies doctrine if "they are based on the same operative events he presented to the [NY]SDHR"). Here, not including retaliation, plaintiff alleges exactly the same factual claims as set forth in her NYSDHR Complaint and there "is no doubt that election of remedies bars all claims arising from the facts set forth" in plaintiff's NYSDHR complaint. Skates v. Inc. Vill. of Freeport, No. 15 CV 136 (SJF)(AYS), 2016 WL

_____

the EEOC pursuant to the Title VII requirement that all complaints filed directly with the EEOC be referred to the local agency." Alston v. Microsoft Corp., No. 08 Civ. 3547 (DC), 2009 WL 1116360, at *4 (S.D.N.Y. 2009) (citations omitted). Based on the record, neither of these exceptions apply. Plaintiff filed her complaint directly with the NYSDHR and her complaint was dismissed after an investigation.

[36] Plaintiff asserts that the election of remedies doctrine only applies if plaintiff had a full and fair opportunity to litigate her claims at the NYSDHR. (See Pl.'s Memorandum at p. 7). In support, plaintiff cites to Kosakow. 274 F.3d at 706, and Lloyd, No. 03 Civ. 7557 (BSJ), 2004 WL 2093468 (S.D.N.Y. Sept 17, 2004). However, in both cases, the courts did not address election of remedies; rather, they addressed whether collateral estoppel precluded plaintiff from litigating in federal court. See DeBerry v. Brookdale Univ. Hosp. & Med. Ctr., 11 F. Supp. 3d 387, 392, n.3 (E.D.N.Y. 2014) (where the Court rejected plaintiff's reliance on Kosakow and Lloyd by explaining that the cases dealt with collateral estoppel and did not hold that an exception to the election of remedies doctrine exists based upon whether plaintiff had a full and fair opportunity to litigate her claims). The election of remedies doctrine is distinct from collateral estoppel as the determination of whether plaintiff's claims are barred due to the election of remedies turns solely on the filing of the administrative complaint and not whether plaintiff had a full and fair opportunity to litigate. See e.g. Wiercinski, 2010 WL 278116, at *3 (where the Court analyzed the preclusion doctrine and election of remedies separately).

1459659, at *21 (E.D.N.Y. Jan. 28, 2016), <u>report and recommendation adopted,</u> 2016 WL 1452391 (E.D.N.Y. Apr. 12, 2016).  However, where plaintiff's "termination is nothing more than 'the culmination' of an employer's allegedly unlawful practice, the claim that such termination was retaliatory is nonetheless barred" by the election of remedies. <u>Id.</u> (quoting <u>Ulysse v. FreshDirect, LLC,</u> No. 14 CV 3556 (PKC), 2015 WL 5692938, at *2 (E.D.N.Y. Sept. 28, 2015)).

Accordingly, defendants' motion for summary judgment should be granted as to plaintiff's claims under the New York State Human Rights Law.

## CONCLUSION

Accordingly, it is respectfully recommended that defendants' motion for summary judgment as well as plaintiff's cross-motion for summary judgment should be granted in part and denied in part.  The Court respectfully recommends that defendants' motion for summary judgment regarding plaintiff's claims for FMLA retaliation, breach of contract, and claims arising under the NYSHRL should be granted.  The Court should deny defendants' motion for summary judgment and grant plaintiff's cross-motion for summary judgment on the grounds that J.K. Management is a proper party, J.K. Management and 75 Lenox are a single-employer, and that defendants qualify as an 'employer' under Title VII and the ADEA.  As there are material issues of fact in dispute which require a trial, the Court should deny defendants' motion for summary judgment with respect to plaintiff's discrimination claims under Title VII and the ADEA as well as plaintiff's retaliation claims under Title VII, the ADEA, and the FLSA.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections must be made within the fourteen-day period.  Failure to file a timely objection to this Report generally waives any further judicial review.  Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.


                                                        _____/S/_____
                                                        LOIS BLOOM
                                                        United States Magistrate Judge

Dated:  February 1, 2017
            Brooklyn, New York

40